United States v. Maldonado-Passage 20-6010. Mr. Sample, are you ready to begin? Yes, your honors. Good morning. May it please the court, Brandon Sample for Joseph Maldonado-Passage. Your honor, your honors, today I want to focus my argument on the sentencing issue that has been raised in the brief in this case. The district court found that the counts 1 and 2, which involved an alleged plot to kill Carol Baskin, should not be grouped together. The district court determined that the counts should not be grouped because, as the government had advanced, they involved different distinct kinds of harm, fear, etc., different dates, different proposed hitmen, and we believe that the district court erred in reaching that determination principally based upon this court's decision in United States v. Norman. This is a case that was decided in 1991, I believe based upon the 1988 version of the guidelines, which application note 4 of 3D1.2 does appear to mirror the current version of the guidelines that Mr. Maldonado-Passage was sentenced based upon, and this court rejected almost a very similar argument advanced by the government of distinct separate dates, fear, and risk of harm to avoid the grouping of counts that the defendant in that case had tried to essentially make bomb threats while the primary victim was going to be flying on the airline involved different timelines, and this court rejected the government's effort to have the different counts separately, not grouped, and we believe that based on Norman that the facts of this case are essentially on all fours. Is Norman distinguishable in that the harm that would have been suffered there would have been inconvenienced? The victim would have been patted down, the luggage would have been searched, apologies would have been made, and he's back on the airplane flying somewhere, whereas the victim here was faced with the prospect, real prospect, of losing her life, and is that more akin to note 4, the last example, that they do not group if convicted of two counts of rape for raping the same person on different days? I don't believe so, and I say that largely based upon what Norman had adopted in reference to the Sixth Circuit's case in United States versus Wilson, and Norman, they talked about Wilson was a hitman case, kind of like the facts at issue in the Molinano Passage case, and Norman said that, you know, the defendant had been making phone calls where he was trying to its determination that under those circumstances the counts should be grouped and not separate, so I don't believe the fact that the nature of the possible harm is sufficient to bring it within the exception that your honor referenced in note 4. Let me ask you what our standard of review is here. There appear to be at least two lines of authority in this circuit regarding the application of a guideline to essentially undisputed historical facts. Some one line says our review is de novo, another says it's the test is clearly erroneous, perhaps if we look further we'd see cases that say it's the abuse of discretion review. So I'm confident which type of review you would prefer here. Can you make sense of our precedent and tell us why your view of the standard of review is correct? Your honor, of course we would advance that the court should review the issue de novo. I believe that in large part this, for the purposes of this case, it's really turning on an issue of a legal determination as applies to the fact, so it's almost like a mixed question of law and fact. And in other contexts, for example, like in the ineffective assistance of counsel context where you have mixed questions of law and fact, this court typically will review those issues de novo and I think that it would be appropriate, particularly when the court is having to make a legal determination about the the legal and the legal applicability of the relevant guideline provision to these particular facts that it should do that. Am I correct that the the ultimate decision here is whether this was the same course of conduct? Isn't that essentially it? That is true, your honor. Yes. And haven't we on occasion said that that's a factual question reviewed for clear error? And to take it one step further, the purpose of this guideline is to control abuse of discretion by prosecutors in overcharging. And that ultimate decision strikes me as one that district judges who are familiar with how things are charged and so on is in a better position than appellate judges who probably don't have a lot to offer here regarding whether for that purpose, for the purpose of preventing overcharging the determination of whether it's the same course of conduct is best left in the hands of the district judge. Can you respond to that? It's a tough question. I'm not expecting the answer, but it is tough, your honor. I appreciate the court's institutional concern for the role district courts play in these types of fact-finding processes. And I think, though, that you know, you would almost look at, you know, I would want to defer to like the rule of orderliness that you typically see that what what is how what's in a review? Did this court apply in Norman? And my recollection of that is it reviewed it de novo. And so just based on that alone, I would argue that that line, or at least Norman has applied here, which I think was the first case where we got into this kind of situation with 3D1, that the court would use the de novo standard. Digging deeper, I would love the opportunity to provide the court with, you know, some short briefing, further briefing on that particular issue, if it would be so inclined. But it's like to receive just in the course of this argument. How many pages do you think you'd need for that? Probably not more than five, your honor. Well, unless another member of the panel disagrees, if council wants to address the standard of review in briefs not longer than five pages due in 10 days, then we'll permit those simultaneous briefs. Judge Kelly, do you have some suggestion in that regard? No, that's fine with me. But I think you ought to start with the language of the sentencing guideline that all counts involving substantially the same harm shall be grouped together into a single group. And the commentary seems fairly clear, although it's not really very clear, that when the same victim and two or more transactions, a common scheme to do the same one thing to that person, you group them. I mean, put that in your five pages. Yeah, yes, your honor. I mean, that's the argument that we've advanced that realistically, and the parties in the district court, the district judge, they indicated this was a closed call. And the district court gave a lot of attention to this issue and trying to distinguish some out of circuit precedent that came to a different conclusion. But we do think it's rather straightforward. And if the panel doesn't have any other further questions. I do. Yes, your honor. I'll go ahead, Judge Kelly. What are we talking about here, whether it's grouped or not grouped with respect to the sentencing involved? How many more months did your client get? Because there was no grouping, as opposed to if they had been grouped? So the revised range, your honor, if I recall correctly, would have been 210 to 262 months. Right. If the counts had been grouped. So he did receive more time than the low end. He did receive 200. And how many months did he get? I believe it was 262, but I'm not, I don't recall offhand. 264. Without grouping, it would have been 262 to 327. And he got 262, you said? With grouping, it would be 210 to 262, your honor. Right. That would be the range. Correct. And without grouping, it's 262 to 327. Correct. And what did he get? 264, I believe Judge Phillips indicated. Okay. So two months is what we're talking about, theoretically. Well, your honor, if we assume that the district court imposes the low end, if this court was to vacate and remand for re-sentencing, then it's a lot more than two months. Hope springs eternal. It does, your honor. My question for you concerns the language of the guideline and just what we make of this. When counts involve the same victim, check. And two or more actor transactions, check. And then we get to connected by a common criminal objective, which may be killing her or constituting part of a common scheme or plan, which is 1B1.3 kind of language. So we have some direction in the guidelines. The examples that are given to illustrate what that means are, as you noted, in application four. And there are a number of them given, which don't really seem to me to be the same as what's involved here. For instance, stealing a car and changing the odometer, I think is one of them. Which of these four examples do you rely on to say that one's like our case? And if none of them are, does that weigh heavily against your position? Your honor, we rely principally on the language of the guideline itself and not the examples. And I understand why, which is I don't think any of the examples particularly help you. But the guideline commentary, unless it runs counter to the guideline itself, is treated like the guideline. Your honor, I of course appreciate how the application notes interact with the guideline itself. But we also don't have anything that's factually similar in there to the particular situation either. And so I think it also cuts the other way as well, that if there's nothing in the application note that's on point, the argument can also go that we should be just really focusing on the guideline itself, the plain language of the guideline. Isn't the closest one the rape? We would disagree, your honor. And we think that the Norman case is what makes plain that that's not the case. The rape example was already in existence at the time when this court decided Norman. It was there from the guidelines from the get-go. And if this court wanted to draw that kind of distinction, it could have done that in Norman. It could have rejected the Sixth Circuit's decision in Wilson. And it didn't do that. And I think that just based on Norman, which is our best case for reversal here, that the judgment of the district court should be reversed. The case should be ranted for resentencing. And with that, if there are no further questions, I'll reserve the balance of my time. Well, if the counts had been split, let's say that they charged him one with crossing state lines to hire a murderer. And then the other count was an offshoot of that, but a different factual basis. Would you have the same argument? If it's part of the same criminal objective, common scheme or plan, I believe that argument would likely be the same. Thank you, Mr. Sample. Mr. Krieger. Thank you, Your Honor. And may it please the court, Stephen Krieger on behalf of the United States. The district court properly declined to group counts one and two. I think probably the best place to start, although it sounds like the court will want supplemental briefing on this, maybe to discuss the standard of review a little bit because I know the court was spending some time there. Ultimately, the overall grouping decision is reviewed de novo, this court has said. But under the de novo standard of review, there are subsidiary questions. One such question is the primary driver here, which is essentially whether there was the same course of conduct. And that subsidiary question, this court has said it is a factual question that's reviewed for clear error. And the reason being is the district court has been the best place to review all the facts, having been exposed to everything, having been exposed to the trial, having seen the witnesses, knowing the inner workings of the case, has an institutional advantage in determining whether it's the same course of conduct, whether it's the same harm, or whether it's divergent harms. Why does it when none of the facts are disputed here? Well, your honor, the dispute would be that this is part of the same. Here's, I think, probably the best example. It's a legal question, whether it's the same course of conduct, or whether it's the same common scheme or plan. It's made of facts, there are all sorts of facts that are resolved, so that then you can apply that standard. But I don't understand why the standard itself is a fact question rather than a legal one. Your honor, perhaps a hypothetical that's not this case might provide some illumination. So let's say you have this case versus you have a case where Mr. Maldonado Passage hired the second hitman to help the first hitman. And so they would be working in connection. At that point, you don't have a two-pronged attack, which is what the Seventh Circuit said in Scott. You have two different lines, essentially, of double the harm, to use the phrase that Scott used. It's that determination, were they working together? Are they not working together? Is it the same course? Or is it two separate courses running parallel that are factual questions? More to the point, or in addition to that, Mr. Maldonado Passage's attorney said that Norman provided his best support. The problem with Norman is that when this court was addressing 3D1.2B, the court didn't have any factual findings, because the district court in that case had used a different guideline that it considered similar. And so the court didn't have any factual and it had concluded under 3D1.2D that they could not be grouped. This court concluded that a different guideline applied, therefore, a completely different rule applied, and went on to analyze it in the first instance. Looking at Norman, there are a couple of distinguishing factors. First of all, this was, Norman essentially was a, were going one course of action. The defendant called the airline, told him, told the airline that his victim was carrying a bomb on board. But by the time that first call had happened, the victim had left. The defendant, the defendant Norman called again. The victim wasn't even on the airplane. It wasn't until the third attempt that he was actually taken off the airplane. This would be akin to if the first hitman had tried and been unsuccessful, tried a second time and been unsuccessful, and then tried a third time. All three of those counts with the same hitman, the government would admit, would likely be grouped for purposes of, ultimately, we wouldn't be charging three separate counts involving the same hitman. But ostensibly, those would be grouped because it would be that hitman attempting to murder Ms. Baskin. Again, going back to Scott, the issue that we have here is we have one course of conduct. We have one hitman who's operating independently. We then have Mr. Maldonado Passage attempting to hire a second hitman to double down on the risk of harm. I think this gets into both what Judge Kelly and Judge Phillips were asking and discussing, which is the guideline itself. There is something in addition to the same victim. There has to be harm. What was the harm that they wanted to do to the victim? Well, in the first count, Mr. Maldonado- He didn't kill her. Well, Judge Kelly, in the first- The second one was the same, was it not? She can only be killed once. Well, Your Honor, I think the issue I would take with defining it so broadly is that when you look at the examples the Sentencing Commission provided of things that do not group under 3D1.2b, for example, to use the example that Judge Phillips was referring to several times, rape. The purpose of a rape, depending on who you ask, is either to derive sexual gratification- The purpose of what? I'm sorry. The purpose of a rape. So the guidelines- Well, two rapes, that's two separate incidents that are completed. In other words, if I beat you up tomorrow and then wait for you on the street a week later and beat you up again, I don't think you'd say that's just one offense. I'd say that's two, and they shouldn't be grouped. Well, Your Honor, if the rape can be distinguished as far as that, I would- I can distinguish it really easy. Okay. I would back the court off to a different example that the guidelines say should not be shooting at the same federal officer. Those shootings, the guidelines say, should not be grouped. The shootings in both of those instances would be essentially an incomplete act against the same victim on different occasions. Isn't that just expressing the same thing Judge Kelly just was, which is the victim suffers that scare and that harm independently on separate occasions, which didn't happen here. Well, Your Honor, Ms. Baskin was aware that when a pit man had been hired to kill her, and then was aware, I believe, that Mr. Maldonado-Cossage was seeking to hire a second pit man. Oh, I didn't understand that. You didn't understand what I'm saying, or- No, I didn't understand that. That was the fact. I believe that's accurate. I'm drawing a blink on where it would be in the record, and I apologize for that, and I could be mistaken. What do we do about comment four? Everybody's talked about comment three, but what about comment four? Well, Your Honor, comment four specifically gives the example that two robberies are not to be counted, and it gives the reason that the- Well, it says counts that a part of a single course of conduct with a single criminal objective and represent essentially one composite harm to the same victim are to be grouped together. Correct, and this is where- Even if they constitute distinct offenses occurring at different times. So, I just don't know where you're going with that. Well, Your Honor, this is where I would go back to the rationale the Seventh Circuit gave in Scott, because in Scott, the Seventh Circuit explained that when you hire a second pit man, or where you attempt to hire a second pit man, where the first is still out there, that is a separate composite harm, because that is an attempt to increase the risk to the victim, and ultimately what it- The Seventh Circuit case really was dealing with a variance, wasn't it? It was dealing with the departure because- And it was dicta with respect to the other items. Well, Your Honor, the rationale for the district court for imposing the departure and the rationale for the Seventh Circuit in affirming the departure was because the Seventh Circuit and the district court in Scott concluded that the situation where two separate pit men are hired independently of each other was outside of the heartland and was not envisioned by 3D1.2b. What we have here is essentially cutting out the let's group it and then depart because the situation isn't covered by 3D1.2b. Would it be different- Excuse me, go ahead. Please, please follow up. Would it be different if she had known of the first hit man coming towards her and then he didn't make it and then she found out the second one was coming? Would that make a difference in your argument? I don't think it would make a difference. I think it would make it stronger. The guidelines largely look at the culpability or the intent of the defendant throughout the guidelines and so Mr. Maldonado passage by not calling off the first hit man and hiring a second hit man was attempting to increase the risk of harm to Miss Baskin. Otherwise, what this court would be holding is that in the case of the hit man, a defendant is free to hire a second, a third, a fourth, a fifth hit man and constantly increasing the risk to the victims with absolutely no increase in the defendant's sentence, which is ultimately what the Seventh Circuit was concerned about. Well, if Scott controls, you would lose. If Scott were a Tenth Circuit case, you'd lose because, and I'm asking this question, I don't mean to sound so assertive about it, but you would lose because the Seventh Circuit, it's the same case as this one. You have murder for hire with hit man number one who then gets in jail and tries to subcontract it. The woman who is trying to collect the insurance proceeds is dissatisfied with him and goes and gets her own hit man, a second one. And so it's like our case in that there are two separate hit men controlled by the person equivalent to the defendant here and the court grouped those two. And that's our question, is whether we should group it. I understand that it then went to departure, but I don't care because that's not our question. Our question is grouping. And the Seventh Circuit grouped in our exact situation. Tell me why not. So the Seventh Circuit did not group. The district court grouped and that grouping decision was not appealed. And so whether or not to actually group was not before the Seventh Circuit and Scott. What was before the Seventh Circuit was the departure. What the government is relying upon on appeal, what the district court and the probation office relied upon in the district court is the rationale. And the rationale on Scott is that the hiring of a second independent hit man increases the risk to the victim twofold. Because in the application, in determining whether there's a common criminal objective or the same scheme or plan, one of the things that the court looks at is whether there's one composite harm or whether there's multiple composite harms, whether and composite harm being defined as including an increase in risk to the victim. That's what's said immediately before the parenthetical where it explains that robbery of the same victim on two different days should not be grouped, even though it is now it doesn't say this part, but it follows, even though the objective of the robbery would be to obtain property from the victim. The common thread that runs through all three of the you shall, the court should not group is that the three examples all involve the same offense and ostensibly would all involve the same criminal objective, be it shooting at a federal officer, which would involve trying, attempting to kill them, presumably, robbery, attempting to obtain the victim's property, or rape, which would, again, depending on who you talk to, either be for to exhibit power over the victim or to exact sexual gratification from the victim. In all three of those cases, if you define criminal, same criminal objective broadly, then you would have to group those cases. By giving these examples, the commission says you don't group it that broadly. What you do is you look at, is there a separate risk of harm? And as the Seventh Circuit explained, and affirming the departure, as the district court found here, and concluding that 3D1.2B does not apply, is that by hiring a second hit man or attempting to hire a second hit man, you increase the risk or you're intending to increase the risk to the victim more than what already exists with the hit man that's already out. What I was talking about, and Scott, and I concede your point that it is the district court that's saying that, and the Seventh Circuit is acknowledging the district court's position, but in footnote three, the Seventh Circuit says that it refers to violations of section 1958, or statute, and says that 3D1.2B, the guideline that requires grouping, that requires forming of a single group from different criminal offenses, in this case, multiple violations of section 1958. So, can't say that the Seventh Circuit held that, but certainly in that footnote, it's suggesting it pretty strongly. If I remember that footnote correctly, first, can I respond? If I remember that footnote correctly, I believe that's talking about why the district court would have grouped it. I don't have Scott right in front of me, so I'm not 100% sure. If there are no further questions. Judge Kelly, do you have a question? No, I have no question. Your time has expired. I have nothing further, Your Honor. Oh, okay. I was going to give you 20 minutes, but that was an excellent argument, both counsel. Thank you very much. The case is submitted. Counsel are excused.